Of Counsel:
ALSTON HUNT FLOYD & ING
Attorneys at Law
A Law Corporation

| | |
|---|---|
| PAUL ALSTON | 1126 |
| KRISTIN L. HOLLAND | 10063 |

Suite 1800
1001 Bishop Street
Honolulu, Hawai`i  96813
Telephone: (808) 524-1800
Facsimile: (808) 524-4591
E-mail:  palston@ahfi.com
         kholland@ahfi.com

Attorneys for Plaintiff
HAWAII ISLAND AIR, INC. DBA
ISLAND AIR

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| HAWAII ISLAND AIR, INC., DBA ISLAND AIR, A DELAWARE CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>MERLOT AERO LIMITED, DBA MERLOT.AERO, A NEW ZEALAND LIMITED COMPANY<br><br>Defendant. | Civil No.<br>(Contract)<br><br>**COMPLAINT; EXHIBITS A, B & C; DEMAND FOR JURY TRIAL** |

912582v2

**I.   PRELIMINARY STATEMENT**

1.   This is an action for breach of contract and violation of Hawai`i Revised Statutes ("HRS") Chapter 481A et seq., the Uniform Deceptive Trade Practice Act ("UDTP"), arising from Defendant's misrepresentations and failure to supply Plaintiff with the merlot.aero airline operations management software (the "merlot.aero system") according to the terms and conditions of the parties' written contract.

**II.   JURISDICTION**

2.   This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) because it is a civil action between Plaintiff, a citizen of Delaware and Hawai`i, and Defendant, a citizen of New Zealand, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**III.   VENUE**

3.   Venue is proper in this district under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district and because a substantial part of the merlot.aero system that is the subject of this

action was intended to be, and is being, used by Plaintiff in this district.

**IV.   THE PARTIES**

4. Plaintiff Hawai`i Island Air, Inc. (Plaintiff or "Island Air") is a Delaware corporation with its principal place of business in the State of Hawai`i.  Plaintiff maintains and operates a commercial aircraft business which transports passengers, baggage, freight and mail throughout the State of Hawai`i.

5. Defendant Merlot Aero Limited (Defendant or "MAL") is a registered New Zealand Limited Company headquartered in Auckland, New Zealand.

**V.   FACTUAL ALLEGATIONS**

6. Island Air flies more than two hundred (200) weekly flights between the Hawaiian Islands.

7. MAL is a New Zealand based software development company which claims to have ". . . a reputation as an innovator of high performance airline operations management tools . . . "and ". . . decades of experience developing industry-leading solutions for

airline operations."  MAL claims to provide ". . . service unsurpassed in [its] field," which it calls "Legendary Service" that ". . . goes beyond customer satisfaction."  Copies of these website advertisements are attached as Exhibit A.

8.     MAL advertises that it can provide reliable software for airlines like Plaintiff.  Specifically, MAL advertises "a comprehensive suite of modules for airline operations and crew management, planning, tracking and regulatory compliance to manage operations and ensure overall safety, efficiency and quality of your airline."  MAL calls its "comprehensive" product merlot.aero.  Copies of MAL's website page, http://www.merlot.aero/what-is-merlot and MAL's brochure, with various statements about the merlot.aero system, are attached as Exhibit B.

9.     MAL claims that "merlot.aero is the next revolution in airline operations management tools" and promises that it has "revolutionised airline technology to ensure your airline is prepared to embrace the long term as an airline that is safe, secure, scalable, sustainable, flexible, and profitable while providing good value to

customers."  See http://www.merlot.aero/technology-overview, a copy of which is attached as Exhibit C.

  10. In late 2013, Plaintiff determined that it wanted to explore alternatives to AirMax, its existing crew scheduling, systems operation and flight control software package.

  11. In reliance on the advertising and representations made by MAL about the merlot.aero system, Plaintiff entered into a written Supply Agreement for the merlot.aero system with MAL (the "Supply Agreement").  The Supply Agreement was executed on or about December 17, 2013.  Plaintiff intended to replace AirMax with the merlot.aero system.

  12. Under the Supply Agreement, MAL was to supply the merlot.aero system and Plaintiff agreed to make payments for the system.

  13. Between December 2013 and June 2014, Plaintiff has paid fees to MAL for the merlot.aero system.

14. During this time, Plaintiff continued to use AirMax for its daily operations while the merlot.aero system was being installed by MAL.

15. Within the first few weeks of initial installation of the merlot.aero system, and through and including August 2014, Plaintiff experienced significant and repeated software issues and problems with the merlot.aero system. As a result, Plaintiff continued to utilize AirMax, effectively paying for two systems, well after the merlot.aero system should have been operational.

16. The issues Plaintiff has experienced with the merlot.aero system included, without limitation, problems with: payroll integration; Aircraft Communications Addressing and Reporting System ("ACARS") compatibility; crew access to data from outside the Island Air network through the Crew Portal; other functionality features; and inadequate customer service.

17. Repeated conference calls, emails and other attempts to resolve the problems were unsuccessful.

18. The problems were so extensive that the merlot.aero system had no value to Plaintiff. Due to these functionality issues, Plaintiff wasted considerable time and resources trying to implement the merlot.aero system and had to continue to pay for the AirMax system months after it should not have needed AirMax.

19. Ultimately, Plaintiff decided not to transition its operations from AirMax to the merlot.aero system. Instead, in August, and again in early September, Plaintiff requested a refund from MAL because Plaintiff had come to the conclusion that MAL could not fix the problems and, in any event, Plaintiff had lost confidence in the merlot.aero system and had determined that it would continue to use AirMax.

20. Rather than engage in a dialogue or address these customer services issues, on October 6, 2014, MAL claimed to unilaterally terminate the Supply Agreement and demanded payments from Plaintiff for the remaining contract term. MAL further claimed that Plaintiff had breached the Supply Agreement by complaining about functionality problems and asking for a refund.

## **FIRST CLAIM FOR RELIEF**

## **BREACH OF CONTRACT**

21.   Plaintiff incorporates and re-alleges the factual allegations set forth above as though set forth in full in this First Claim for Relief.

22.   MAL and Plaintiff executed a written Supply Agreement on or around December 17, 2013.

23.   Plaintiff has performed its obligations under the Supply Agreement, unless such obligations were excused.

24.   MAL has materially breached the Supply Agreement by, *inter alia*, failing to supply the merlot.aero system in good working order and failing to remedy the various functionality issues reported by Plaintiff.

25.   MAL has further materially breached the Supply Agreement by failing to perform other terms therein.

26.   MAL's material breach has caused damages to Plaintiff in excess of $75,000, consisting of fees paid by Plaintiff for the

defective merlot.aero system which MAL has refused to refund, and additional damages according to proof at trial.

## SECOND CLAIM FOR RELIEF

## VIOLATION OF HAWAI`I'S UNIFORM DECEPTIVE TRADE PRACTICE ACT ("UDTP") HAWAI`I REVISED STATUTES CHAPTER 481A, *ET SEQ.*

27. Plaintiff incorporates and re-alleges the factual allegations set forth above as though set forth in full in this Second Claim for Relief.

28. In the course of MAL's business dealings with Plaintiff and in its dealings with other airline customers, MAL engaged in deceptive trade practices, including, without limitation, the following:

   a. Advertising and representing that the merlot.aero system and accompanying customer service have characteristics, uses and benefits that they do not have;

   b. Representing that the merlot.aero system is of a particular superior standard, quality or grade, when

the merlot.aero system is in fact of another lower quality, defective, non-functional or error-prone standard such that it is not usable for the purposes MAL represents to airlines and to Plaintiff; and

c. Engaging in other conduct which similarly creates other misunderstandings with respect to the quality, performance and standards of the merlot.aero system.

29. Plaintiff relied on MAL's misrepresentations in deciding to enter into the Supply Agreement and pay fees for the merlot.aero system.

30. MAL engaged in these trade practices knowing them to be deceptive and continues to engage in deceptive practices in denying a refund to Plaintiff.

31. Plaintiff has been damaged by MAL's unfair and deceptive conduct in an amount no less than $75,000, representing fees paid by Plaintiff to MAL for the defective merlot.aero system.

**VI.   PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays as follows:

A.   For judgment against MAL on all Claims for Relief herein;

B.   For general and special damages in an amount to be proven at trial, together with interest and other expenses and costs;

C.   For declaratory relief with respect to the First Claim for Relief, including a judgment that that Plaintiff has performed its obligations under the Supply Agreement to date, is entitled to a refund from MAL in the amounts of fees paid to date for the defective merlot.aero system, has no ongoing duty to continue to use the merlot.aero system or to continue to perform under the Supply Agreement and that MAL is not entitled to further payments from Plaintiff for the remaining term of the Supply Agreement;

D.   For rescission and restitution with respect to the First Claim for Relief, voiding the Supply Agreement and restoring Plaintiff to its position before the Supply Agreement was entered into;

E.  For injunctive relief with respect to the Second Claim for Relief under the principles of equity and on terms the Court considers reasonable and as provided by HRS §481A-4(a);

F.  For attorneys' fees and costs of suit, as authorized by HRS §481A-4(b), or other applicable laws or by equity; and

G.  For such other relief as the Court deems just, equitable and proper.

DATED: Honolulu, Hawai`i, October 13, 2014.

/s/ Kristin Holland
PAUL ALSTON
KRISTIN L. HOLLAND

Attorneys for Plaintiff
Hawaii Island Air, Inc. dba Island Air