IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HAWAII ISLAND AIR, INC., DBA ISLAND AIR, A DELAWARE CORPORATION, | ) ) ) ) | CIV. NO. 14-00466 BMK ORDER DENYING MERLOT AERO LIMITED d/b/a |
| Plaintiff, | ) ) | MERLOT.AERO'S MOTION TO DISMISS PLAINTIFF HAWAII |
| vs. | ) ) | ISLAND AIR, INC., DBA ISLAND AIR'S COMPLAINT, FILED |
| MERLOT AERO LIMITED, DBA MERLOT.AERO, A NEW ZEALAND LIMITED COMPANY, | ) ) ) ) | OCTOBER 13, 2014 [DOC. NO. 1] FOR LACK OF PERSONAL JURISDICTION, IMPROPER VENUE, AND/OR FAILURE TO |
| Defendant. | ) ) | STATE A CLAIM |
| _____ | ) | |

ORDER DENYING MERLOT AERO LIMITED d/b/a MERLOT.AERO'S
MOTION TO DISMISS PLAINTIFF HAWAII ISLAND AIR, INC., DBA
ISLAND AIR'S COMPLAINT, FILED OCTOBER 13, 2014 [DOC. NO. 1] FOR
LACK OF PERSONAL JURISDICTION, IMPROPER VENUE, AND/OR
<u>FAILURE TO STATE A CLAIM</u>

Before the Court is Defendant Merlot Aero Limited d/b/a

Merlot.Aero's ("Merlot") Motion to Dismiss Plaintiff Hawaii Island Air, Inc.,

DBA Island Air's Complaint, Filed October 13, 2014 [Doc. No. 1] for Lack of

Personal Jurisdiction, Improper Venue, and/or Failure to State a Claim (the

"Motion").  (Doc. No. 11.)  Merlot seeks dismissal on the grounds that (1) the

Court lacks specific jurisdiction over Merlot, which did not avail itself to this

forum; (2) New Zealand, not Hawaii, is the proper venue for this case; and (3) Count II of the Complaint is a cause of action that does not exist under New Zealand law.

This Motion came for hearing before the Court on January 16, 2015. After careful consideration of the Motion, the supporting and opposing memoranda, and the arguments of counsel, the Court hereby DENIES the Motion.

<u>FACTUAL BACKGROUND</u>

This action involves a contract for software-related services entered into by Merlot and Plaintiff Hawaii Island Air, Inc., dba Island Air ("Island Air"). Merlot is a New Zealand-based company that develops and provides software programs for airline companies, including "a comprehensive suite of modules for airline operations and crew management, planning, tracking and regulatory compliance to manage operations and ensure overall safety, efficiency and quality of your airline." (Compl. ¶ 8.) Merlot does not have any offices, agents, or employees in Hawaii. (Mot. at 4.)

Island Air is an airline incorporated in Delaware, but has its principal place of business in Hawaii. It is exclusively an inter-island carrier and transports passengers, baggage, freight, and mail within the State of Hawaii. (Compl. ¶ 4; Mem. in Opp'n, Decl. of Edward Davidson ("Davidson Decl.") ¶ 2.)

In or around 2013, Island Air began exploring alternatives to its existing software package used for crew scheduling, systems operation, and flight control.  (Compl. ¶ 10.)  Island Air allegedly reached out to Merlot's United States office in Washington State to discuss whether Merlot could offer any services to meet Island Air's needs.  (Mem. in Opp'n at 3.)  Although the parties largely corresponded via telephone and e-mail, Merlot allegedly came to Hawaii twice to make sales presentations to Island Air.  (Id.)  On or around December 17, 2013, representatives for Merlot and Island Air entered into the merlot.aero Supply Agreement ("Supply Agreement"), which provided that Merlot would provide Island Air with use of its software program known as merlot.aero.  (Compl. ¶ 11; Mot., Exh. A.)  The Supply Agreement also specified that Merlot would provide on-site training for Island Air employees in Hawaii, technical support from New Zealand, as well as "On-Site Discovery" and "On-Site Support."  (Mem. in Opp'n at 5; Mot., Exh. A, Schedule § 2.)  The Supply Agreement was for an initial 10-year period, thereafter renewable for three-year terms.  (Mot., Exh. A at 1.)

As relevant to this case, the Supply Agreement further provided a choice-of-law provision, whereby the parties agreed that the Supply Agreement "is governed by the laws of New Zealand and the parties submit to the non-exclusive jurisdiction of the New Zealand courts."  (Id., Exh. A § 13(j).)

Broadly speaking, Island Air contends that Merlot breached the Supply Agreement by failing to supply it with a workable software system. Shortly after the installation of the merlot.aero system, Island Air alleges that it experienced significant and repeated software problems, including problems with payroll integration, Aircraft Communications Addressing and Reporting System ("ACARS") compatibility, crew access to data through the Crew Portal, other functionality features, and inadequate customer service. (Compl. ¶¶ 15-16.) Island Air claims that it informed Merlot of these issues, but Merlot's inability to resolve the problems rendered the merlot.aero system useless. (Id. ¶¶ 17-18.) Ultimately, Island Air decided not to use the merlot.aero system and demanded a refund from Merlot. (Id. ¶ 19.) Island Air claims that, in response, Merlot unilaterally terminated the Supply Agreement and demanded payment in full for the remaining contract term. (Id. ¶ 20.)

Island Air also alleges violation of Hawaii's Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes ("HRS") chapter 481A. Island Air claims that Merlot engaged in deceptive trade practices by misrepresenting the characteristics, uses, and benefits of the merlot.aero system and customer service; misrepresenting the standard, quality, or grade of the merlot.aero system, which is actually lower quality, defective, non-functional, or error-prone such that it is not

usable for the purposes Merlot represents; and engaging in other conduct that misrepresents the quality, performance, and standards of the merlot.aero system. (Id. ¶ 28.)  Island Air cites largely to Merlot's website, which states that merlot.aero provides "a comprehensive suite of modules for airline operations and crew management; planning, tracking and regulatory compliance to manage operations and ensure overall safety, efficiency and quality of your airline."  (Id. ¶ 8.)  Merlot's website further claims that Merlot has "revolutionized airline technology to ensure your airline is prepared to embrace the long term as an airline that is safe, secure, scalable, sustainable, flexible, and profitable while providing good value to customers."  (Id. ¶ 9.)

Island Air filed the underlying Complaint in this case on October 13, 2014.  Subsequently, Merlot filed a complaint with the High Court of New Zealand (Auckland Registry) on November 6, 2014, similarly alleging that Island Air breached the Supply Agreement.  (Mot., Exh. B.)  As of the hearing on this matter, Island Air had not answered that complaint.  (Mem. in Opp'n at 22.)

Merlot now requests that the Court dismiss the Complaint on the basis that the Court lacks personal jurisdiction over it, or, in the alternative, on the basis of forum non conveniens.

DISCUSSION

I.  <u>PERSONAL JURISDICTION</u>

Merlot first argues that this case should be dismissed, because the

Court lacks personal jurisdiction over it.  The Due Process Clause of the United

States Constitution[1] requires that Merlot have "certain minimum contacts with

[Hawaii] such that the maintenance of the suit does not offend 'traditional notions

of fair play and substantial justice.'"  <u>See</u> <u>Int'l Shoe Co. v. Washington</u>, 326 U.S.

310, 316 (1945) (quoting <u>Milliken v. Meyer</u>, 311 U.S. 457, 463 (1940)).  To have

the required minimum contacts, Merlot must have purposefully availed itself of the

privilege of conducting activities in Hawaii, thereby invoking the benefits and

protections of Hawaii's laws and leading it to "'reasonably anticipate being haled

into court'" in Hawaii.  <u>See</u> <u>Sher v. Johnson</u>, 911 F.2d 1357, 1361 (9th Cir. 1990)

(quoting <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980)).

Requiring "minimum contacts" "protects the defendant against the burdens of

---

[1] "Where, as here, there is no applicable federal statute governing personal
jurisdiction, the district court applies the law of the state in which the district court
sits." <u>Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme</u>, 433 F.3d
1199, 1205 (9th Cir. 2006) (en banc).  The "jurisdictional inquiries under state law
and federal due process merge into one analysis" when, as here, the state's long-
arm statute is "coextensive with federal due process requirements[.]" <u>Roth v.
Garcia Marquez</u>, 942 F.2d 617, 620 (9th Cir. 1991).  Accordingly, personal
jurisdiction over Merlot depends on an analysis of federal due process
requirements.

6

litigating in a distant or inconvenient forum.  And it acts to ensure that the States[,] through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system."  <u>World-Wide Volkswagen Corp.</u>, 444 U.S. at 292 (brackets added).

Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate and, when the motion is based on written materials, the plaintiff need only make a prima facie showing of jurisdictional facts.  <u>Sher</u>, 911 F.2d at 1361. The plaintiff cannot "simply rest on the bare allegations of its complaint," <u>Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.</u>, 551 F.2d 784, 787 (9th Cir. 1977), but uncontroverted allegations in the complaint must be taken as true.  <u>AT&T v. Compagnie Bruxelles Lambert</u>, 94 F.3d 586, 588 (9th Cir. 1996).

A.    <u>General Jurisdiction</u>

First, the Court examines whether it has general jurisdiction over Merlot.  "General jurisdiction exists when a defendant is domiciled in the forum state or his activities there are 'substantial' or 'continuous and systematic.'" <u>Panavision Int'l, L.P. v. Toeppen</u>, 141 F.3d 1316, 1320 (9th Cir. 1998) (citing <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414-16 (1984)); <u>see also</u> <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 801 (9th Cir.

2004) ("This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." (citation omitted)).

In the present case, the Court does not have general jurisdiction over Merlot. It is undisputed that Merlot is not domiciled in Hawaii, and there is no evidence that it engaged in "substantial" or "continuous and systematic" activities in or aimed at Hawaii. Island Air appears to concede that there is no evidence supporting the exercise of general jurisdiction over Merlot: "Island Air does not have enough information, without jurisdictional discovery, regarding [Merlot's] other Hawaii activities to know if general jurisdiction exists." (Mem. in Opp'n at 9 n.3.) Thus, the Court agrees that it lacks general jurisdiction over Merlot.

B.     Specific Jurisdiction

Even in the absence of general jurisdiction, the Court may exercise specific jurisdiction over Merlot if the cause of action arises out of Merlot's contacts with or activities in the forum state. See Roth, 942 F.2d at 620.

The United States Supreme Court has made clear that the exercise of specific jurisdiction is proper where "the contact proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (emphasis and

citation omitted).  It has stated:

> Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770, 774, 104 S. Ct. 1473, 1478, 79 L. Ed. 2d 790 (1984), and the litigation results from alleged injuries that "arise out of or relate to" those activities, <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414, 104 S. Ct. 1868, 1872, 80 L. Ed. 2d 404 1984).  Thus "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State" and those products subsequently injure forum consumers.  <u>World-Wide Volkswagen Corp. v. Woodson</u>, <u>supra</u>, 444 U.S., at 297-298, 100 S. Ct., at 567-568.  Similarly, a publisher who distributes magazines in a distant State may fairly be held accountable in that forum for damages resulting there from an allegedly defamatory story.  <u>Keeton v. Hustler Magazine, Inc.</u>, <u>supra</u>; <u>see also</u> <u>Calder v. Jones</u>, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984) (suit against author and editor).  ***And with respect to interstate contractual obligations, we have emphasized that parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to regulation and sanctions in the other State for the consequences of their activities.*** <u>Travelers Health Assn. v. Virginia</u>, 339 U.S. 643, 647, 70 S. Ct. 927, 929, 94 L. Ed. 1154 (1950).  <u>See also</u> <u>McGee v. International Life Insurance Co.</u>, 355 U.S. 220, 222-223, 78 S. Ct. 199, 200-201, 2 L. Ed. 2d 223 (1957).

Id. at 472 (internal footnote omitted) (emphasis added).

Based on the principles elucidated above, the Ninth Circuit applies a

three-part test to determine whether a court may exercise specific jurisdiction:

> (1) The nonresident defendant must do some act or
> consummate some transaction with the forum or perform
> some act by which he purposefully avails himself of the
> privilege of conducting activities in the forum, thereby
> invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or results
> from the defendant's forum-related activities; and
>
> (3) exercise of jurisdiction must be reasonable.

See Panavision Int'l Corp., 141 F.2d at 1320 (quoting Omeluk v. Langsten Slip &

Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995)).  As to the first prong, which

tests for "purposeful availment," the Ninth Circuit's standard is different for tort

and contract actions.  The term "purposeful availment" is used when examining

both tort and contract claims, "to include both purposeful availment and purposeful

direction, but availment and direction are, in fact, two distinct concepts.  A

purposeful availment analysis is most often used in suits sounding in contract.  A

purposeful direction analysis, on the other hand, is most often used in suits

sounding in tort."  Schwarzenegger, 374 F.3d at 802 (internal citations omitted).[2]

---

[2] Island Air conflates the two tests, incorrectly relying on the three-part

Moreover, specific jurisdiction must be established for each claim separately. See Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1289 n.8 (9th Cir. 1977) ("Where, as here, a plaintiff raises two separate causes of action, the court must have in personam jurisdiction over the defendant with respect to each claim."). Thus, the court examines Island Air's claims separately to determine whether it has specific jurisdiction over Merlot for each claim.

1.     Count I – Breach of Contract

a.     Purposeful Availment

First, the Court examines whether Merlot "purposefully availed" itself to the privileges and benefits of transacting business in Hawaii. Although a court cannot exercise jurisdiction over a party as a result of "random," "fortuitous," or "attenuated" contacts,

> [j]urisdiction is proper, however, where the contacts
> proximately result from actions by the defendant *himself*
> that create a "substantial connection" with the forum
> State. McGee v. International Life Insurance Co., supra,
> 355 U.S., at 223, 78 S. Ct., at 201; see also Kulko v.
> California Superior Court, supra, 436 U.S. [84], at 94,

---

"effects" test for tort claims established in Calder v. Jones, 465 U.S. 783 (1984), when discussing specific jurisdiction based on both breach of the Supply Agreement and intentional misrepresentation under HRS chapter 481A. (Mem. in Opp'n at 12-13.) Nevertheless, the Court adheres to the Ninth Circuit's tests and applies the "purposeful availment" test to Count I and the "purposeful direction" test to Count II.

n.7, 98 S. Ct. [1690], at 1698, n.7 [1978].  Thus where the defendant "deliberately" has engaged in significant activities within a State, <u>Keeton v. Hustler Magazine, Inc.</u>, <u>supra</u>, 465 U.S., at 781, 104 S. Ct., at 1481, or has created "continuing obligations" between himself and residents of the forum, <u>Travelers Health Assn. v. Virginia</u>, 339 U.S., at 648, 70 S. Ct., at 929, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

<u>Burger King Corp.</u>, 471 U.S. at 475-76 (emphasis in original) (brackets added).

In the context of a contract claim, "a court must examine the circumstances surrounding the contract in making that determination. Accordingly, this court examines 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'"  <u>Evans v. Boston Red Sox</u>, Civil No. 13-00262 SOM-BMK, 2013 WL 6147675, at *5 (D. Haw. Nov. 22, 2013) (quoting <u>Burger King Corp.</u>, 471 U.S. at 479); <u>see also</u> <u>Schwarzenegger</u>, 374 F.3d at 802 ("A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there.").

In the present case, Island Air generally argues that the negotiation,

execution, and performance of the Supply Agreement, executed by Merlot and Island Air, is a sufficient basis for the Court to exercise specific jurisdiction over Merlot, because "[Merlot] came to Hawai'i on multiple occasions to make sales presentations to induce Island Air to enter into the Supply Agreement, conducted two on-site training sessions in Hawai'i, communicated by email and telephone repeatedly with Island Air in Hawai'i, has an affiliate office (or offices) in the United States with employees dedicated to the Island Air account, agreed to service the Supply Agreement for ten years, and knew that Island Air only planned to use [Merlot's] services within Hawai'i[.]" (Mem. in Opp'n at 11.) Island Air points to Merlot's obligation under the Supply Agreement "to conduct at least ten days of on-site training sessions at Island Air's offices in Hawai'i, followed by a decade of ongoing service obligations." (Id. at 13.) It also reiterates that Merlot "knew that Island Air was going to use the [Merlot] services to manage an air fleet which only flies in Hawai'i." (Id.)

Conversely, Merlot takes the position that the Supply Agreement does not constitute its purposeful availment of doing business in Hawaii. Specifically, Merlot argues that the Supply Agreement was, for Merlot's part, negotiated and executed in New Zealand; that the Supply Agreement was to be performed in New Zealand, because, other than two training sessions in Hawaii, the goods and

services at issue were to be provided from New Zealand; that the parties largely

dealt with each other via e-mails and telephone calls; and that the Supply

Agreement's choice-of-law provision designated New Zealand law as the

applicable law.  (Mot. at 9-10.)

As in initial matter, the Court acknowledges that the mere creation of

a contract does not, by itself, subject a defendant to personal jurisdiction in the

forum state.  See Burger King Corp., 471 U.S. at 478 ("If the question is whether

an individual's contract with an out-of-state party alone can automatically establish

sufficient minimum contacts in the other party's home forum, we believe the

answer clearly is that it cannot.").  However, in adopting a "'highly realistic'

approach that recognizes that a 'contract' is 'ordinarily but an intermediate step

serving to tie up prior business negotiations with future consequences which

themselves are the real object of the business transaction,'" id. at 478-79 (quoting

Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 316 (1943)), the Court considers

the circumstances surrounding the Supply Agreement to determine whether Merlot

purposefully availed itself to this forum.

Merlot seems to focus on whether it first reached out to and initiated

contact with Island Air, which the Court acknowledges that it did not.  However,

based on Merlot's conduct in the execution and performance of the Supply

Agreement, Court finds that the creation of "continuing obligations" with Island Air led Merlot to "purposefully avail" itself of the privilege of conducting business in Hawaii.  See Travelers Health Ass'n, 339 U.S. at 648.

It is uncontroverted that Island Air flies exclusively in Hawaii and that the merlot.aero system would be used by Island Air employees solely in Hawaii. Merlot knew that Island Air would use its software in Hawaii, as it was to provide on-site support for the initial training and launch of the merlot.aero system, and it would further provide 10 days of training at Island Air.  Thus, if the merlot.aero system was faulty or Merlot otherwise breached the Supply Agreement, Merlot would have to know that any injury suffered by Island Air would be felt in Hawaii.

As such, although the negotiations and execution of the Supply Agreement may have occurred in New Zealand on the part of Merlot, the actual performance of the Supply Agreement, the use of the merlot.aero product, the impact of the merlot.aero system, and any anticipated consequence undoubtedly occurred in Hawaii.  In light of these facts, it cannot be said that Merlot's contact with the forum state was at all "random," "fortuitous," or "attenuated."  Thus, the Court determines that Merlot's actions in reaching out to create continuing business relationships and obligations with Island Air in Hawaii subject it to personal jurisdiction in Hawaii.

Nor can Merlot argue that its lack of physical presence in Hawaii should deprive the Court of jurisdiction. As the United States Supreme Court has stated, "jurisdiction may not be avoided merely because the defendant did not physically enter the forum State. . . . [I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." Burger King Corp., 471 U.S. at 476. In other words, "[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." Id. (internal citations omitted).

Thus, the fact that Merlot has no physical offices or employees in Hawaii does not mean that it did not "purposefully avail" itself to the forum state. Merlot was in contact with Island Air via telephone and e-mail to induce Island Air to purchase its software for use in Hawaii, and Merlot representatives even came to Hawaii on multiple occasions to sell the merlot.aero system and then to train Island Air employees. Additionally, although, from Merlot's perspective, it was to perform many of its obligations from New Zealand or elsewhere outside of Hawaii, the actual use of the merlot.aero software that is the subject of the Supply

Agreement was designated for use exclusively in Hawaii.

Moreover, Merlot argues that section 13(j) of the Supply Agreement evidences that Merlot never meant to subject itself to Hawaii law. The parties differ as to the interpretation of the choice-of-law provision in the Supply Agreement, which provides, "This agreement is governed by the laws of New Zealand and the parties submit to the non-exclusive jurisdiction of the New Zealand courts." (Mot., Exh. A § 13(j).) Merlot argues that Island Air agreed to subject itself to the jurisdiction of New Zealand courts. (Mot. at 15.) Conversely, Island Air argues that section 13(j) is permissive and non-exclusive, allowing the parties to seek redress in forums other than New Zealand. (Mem. in Opp'n at 16.)

The Court agrees with Island Air. Section 13(j) of the Supply Agreement is a permissive, non-exclusive forum selection clause, meaning that, while New Zealand courts can have jurisdiction over the a lawsuit arising out of the Supply Agreement, they do not have *exclusive* jurisdiction. When construing similar language, the Ninth Circuit has explained that:

> the plain meaning of the language is that the Orange County courts shall have jurisdiction over this action. ***The language says nothing about the Orange County courts having exclusive jurisdiction.*** The effect of the language is merely that the parties consent to the jurisdiction of the Orange County courts. Although the word "shall" is a mandatory term, here it mandates

nothing more than that the Orange County courts have
jurisdiction.  Thus, Supreme cannot object to litigation in
the Orange County Superior Court on the ground that the
court lacks personal jurisdiction.  ***Such consent to
jurisdiction, however, does not mean that the same
subject matter cannot be litigated in any other court***.  In
other words, the forum selection clause in this case is
permissive rather than mandatory.

Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817 F.2d 75, 77 (9th Cir. 1987)

(emphases added) (interpreting contractual language providing that "the laws of

the State of California shall govern the validity, construction, interpretation and

effect of this contract.  The courts of California, County of Orange, shall have

jurisdiction over the parties in any action at law relating to the subject matter or the

interpretation of this contract"); see also Hsu v. OZ Optics Ltd., 211 F.R.D. 615,

618 (N.D. Cal. 2002) ("Forum selection clauses come in two varieties: permissive

and mandatory. . . . 'To be mandatory, a clause must contain language that clearly

designates a forum as the exclusive one.'" (internal citations omitted)).

In the present case, section 13(j) merely provides that the parties

agreed to be amenable to the jurisdiction of New Zealand courts, but it does not

designate New Zealand as the exclusive forum.[3]  Therefore, for the reasons stated

---

[3] Even Merlot's Chief Executive Officer, Mark McCaughan, admits that
New Zealand is not an exclusive forum, because "[t]he purpose of making the
forum-selection clause in paragraph 13(j) of the Supply Agreement permissive was

above, the Court determines that Merlot did purposefully avail itself to this forum when it entered into the Supply Agreement with Island Air.

b.    Arising Out of Forum-Related Activities

Next, "[t]he second requirement of the specific jurisdiction test is that the claims arise out of the defendants' forum-related activities." Ziegler v. Indian River County, 64 F.3d 470, 474 (9th Cir. 1995).  In other words, the Court must determine whether Island Air would not have been injured "but for" Merlot's conduct directed toward Island Air in Hawaii.  See Panavision Int'l, L.P., 141 F.3d at 1322.

In the present case, Island Air's breach of contract claim arises out of Merlot's activities related to the Supply Agreement, which, as discussed above, occurred within the forum.  Merlot argues that its conduct was not forum-related, because the Supply Agreement was negotiated and executed in New Zealand; the Supply Agreement was to be performed in New Zealand, since the goods and services were provided from New Zealand; the parties communicated via e-mails

to allow Merlot to enforce claims and judgments in countries that do not automatically respect the rulings of New Zealand Courts."  (Reply, Decl. of Mark McCaughan ¶ 11.)  Merlot cannot have it both ways; it cannot, on the one hand, use section 13(j) to require parties to submit to the jurisdiction of the New Zealand courts, yet other times turn around and choose a different forum when it is in Merlot's best interest.

and telephone calls; and the Supply Agreement is governed by New Zealand law. (Motion at 9-10.) However, as stated above, all of Merlot's actions in this case were related to Island Air's operations in Hawaii, and thus Island Air's claims arose out of Merlot's forum-related activities. In other words, it is clear that Island Air's alleged injuries were caused by Merlot's activities within the forum.

> ### c. Reasonableness

Finally, the burden shifts to Merlot to demonstrate that it would be unreasonable for this Court to exercise personal jurisdiction over it. The Ninth Circuit employs a seven-part balancing test to evaluate reasonableness:

> (1) the extent of a defendant's purposeful interjection;
> (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. Burger King, 471 U.S. at 476-77, 105 S. Ct. at 2184-85. No one factor is dispositive; a court must balance all seven. Core-Vent [Corp. v. Nobel Indus. AB], 11 F.3d [1482,] at 1488 [9th Cir. 1993].

Panavision Int'l, L.P., 141 F.3d at 1323 (brackets added). The Court addresses each factor in turn.

### i.    Merlot's Purposeful Interjection

As discussed above, Merlot had sufficient contacts with Island Air in Hawaii to purposefully avail itself to this forum.  Although its obligations under the Supply Agreement allowed it to operate largely out of New Zealand, it contracted with Island Air to supply a product and services that would be used exclusively in Hawaii, by a Hawaii-based business, and it should have known that any harm caused by its actions would be felt most strongly—if not exclusively—in Hawaii.  Moreover, Merlot came to Hawaii on multiple occasions for training sessions and was obligated to provide at least 10 more on-site trainings.  All of these contacts indicate Merlot's purposeful interjection in Hawaii, and, as such, this factor weighs heavily in Island Air's favor.

### ii.    Burden on Merlot in Litigating in the Forum

The Court acknowledges that it would be an inconvenience for Merlot to litigate in this forum, given that it is an international corporation with no physical ties to Hawaii.  It would likely be expensive and time-consuming for Merlot's representatives to monitor and participate in litigation in a foreign country.  On the other hand, "unless the 'inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction.'"  Id. at 1323 (quoting Caruth v. Int'l Psychoanalytical

Ass'n, 59 F.3d 126, 128-29 (9th Cir. 1995)).

The burden to Merlot, while not insubstantial, does not rise to the level of deprivation of due process. Merlot has failed to provide any evidence that its foreign location or the lack of witnesses in the forum would deprive it of its due process rights. See Menken v. Emm, 503 F.3d 1050, 1060 (9th Cir. 2007) ("with the advances in transportation and telecommunications and the increasing interstate practice of law, any burden [of litigating in a forum other than one's residence] is substantially less than in days past" (citations omitted)). Moreover, Merlot already has competent local counsel and U.S.-based locations and representatives. Thus, this factor weighs slightly in Island Air's favor.

### iii. Conflict with New Zealand Sovereignty

Merlot argues that Island Air agreed to subject itself to the jurisdiction of New Zealand courts and agreed that the Supply Agreement is governed by New Zealand law. However, Merlot fails to demonstrate how or why this Court's exercise of jurisdiction over this case would impinge on New Zealand's sovereignty. Merlot has not shown that a private, contract dispute between two parties implicates sovereignty issues in any way. Moreover, as discussed above, the forum-selection clause does not indicate that New Zealand was ever designated as the exclusive forum for this dispute. Therefore, as the Court sees no conflict

with New Zealand's sovereignty, this factor weighs in Island Air's favor.

                iv.    <u>Hawaii's Interest in Adjudicating the Dispute</u>

Given that Island Air is wholly located and operating within Hawaii, Island Air argues that a local jury is the appropriate trier of fact. (Mem. in Opp'n at 22.) Merlot provides no analysis of the forum state's interest, other than to state that "*New Zealand* has a strong interest in adjudicating a dispute governed by New Zealand law that also involves a New Zealand corporation." (Mem. in Opp'n at 15 (emphasis added).) Again, neither party provides any reason why their respective forum of choice would have an overwhelming interest in a private, contract dispute between two corporations that does not appear to implicate any state interest. As such, this factor is neutral.

                v.    <u>Efficient Judicial Resolution</u>

Next, the Court considers "the location of the evidence and witnesses. It is no longer weighed heavily given the modern advances in communication and transportation." <u>Panavision Int'l, L.P.</u>, 141 F.3d at 1323 (citing <u>Caruth</u>, 59 F.3d at 129). Given that Island Air allegedly does not have any witnesses or evidence in New Zealand and Merlot allegedly does not have any witnesses or evidence in Hawaii, this factor is likely neutral.

vi.     Island Air's Interest in
Convenient and Effective Relief

Regarding the convenience and effectiveness of relief accorded to

Island Air, the Ninth Circuit has stated that it has "given little weight to the

plaintiff's inconvenience." Id. at 1324 (citing Ziegler, 64 F.3d at 476). Although it

will undoubtedly be more costly for Island Air to litigate in New Zealand that

Hawaii, the burden on Island Air is not prohibitively large. As such, this factor

weighs slightly in Merlot's favor.

vii.     Existence of an Alternative Forum

As Merlot has made clear, New Zealand is a viable, alternative forum.

Island Air agreed to submit to the non-exclusive jurisdiction of New Zealand

courts pursuant to section 13(j) of the Supply Agreement, and, indeed, Merlot has

filed suit against Island Air in New Zealand over breach of the same Supply

Agreement. The Court finds that this factor weighs in favor of Merlot.

Based on a balancing of the seven factors, the Court concludes that,

although a few factors weigh in Merlot's favor, Merlot has failed to demonstrate

that it would be unreasonable for the Court to exercise specific jurisdiction over it.

Thus, the Court finds that, with respect to Count I, Merlot purposefully availed

itself to this forum, Island Air was allegedly injured by Merlot's forum-related

activities, and the Court has a reasonable basis for exercising specific jurisdiction over Merlot.

        2.    <u>Count II – Misrepresentation</u>

        a.    <u>Purposeful Direction</u>

Next, the Court engages in the same three-part test for specific jurisdiction for Count II. However, with regard to the first prong, as opposed to the "purposeful availment" test analyzed in contract-based claims, the "purposeful direction" test is utilized for tort-based claims, which mandates that jurisdiction "attache[s] if the defendant's conduct is aimed at or has an effect in the forum state." <u>Ziegler</u>, 64 F.3d at 473. As stated by the Ninth Circuit:

> [t]he "purposeful direction" or "effects" test is based on <u>Calder v. Jones</u>, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). *It "requires that the defendant . . . have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."* <u>Mavrix Photo, Inc. v. Brand Tech., Inc.</u>], 647 F.3d [1218] at 1228 [(9th Cir. 2011)] (internal quotation marks omitted). Thus, courts may exercise personal jurisdiction over a defendant who engages in an intentional act that causes harm in the forum state, even if that act takes place outside of the forum state. <u>See</u> <u>Yahoo! Inc.</u>, 433 F.3d at 1206; <u>Panavision</u>, 141 F.3d at 1320 ("It is not required that a defendant be physically present or have physical contacts with the forum, so long as his efforts are 'purposefully directed' toward forum residents.").

Washington Shoe Co. v. A-Z Sporting Goods Inc., 704 F.3d 668, 673 (9th Cir. 2012) (emphasis added) (brackets added).

    i.    Intentional Act

    First, the Court inquires as to whether Merlot committed any intentional act.  With regard to Count II, Island Air argues that the "intentional misrepresentations and concealments, through in person sales presentations, as alleged in the complaint constitute deliberate action aimed at Hawai'i sufficient to satisfy the purposeful direction requirement for purposeful jurisdiction."  (Mem. in Opp'n at 13 (citation omitted).)  In its Complaint, Island Air points to the following allegedly deceptive trade practices:

>    a. Advertising and representing that the merlot.aero system and accompanying customer service have characteristics, uses and benefits that they do not have;
>
>    b. Representing that the merlot.aero system is of a particular superior standard, quality or grade, when the merlot.aero system is in fact of another lower quality, defective, non-functional or error-prone standard such that it is not usable for the purposes [Merlot] represents to airlines and to [Island Air]; and
>
>    c. Engaging in other conduct which similarly creates other misunderstandings with respect to the quality, performance and standards of the merlot.aero system.

(Compl. ¶ 28.)  Island Air claims that it "relied on [Merlot's] misrepresentations in

deciding to enter into the Supply Agreement and pay fees for the merlot.aero system." (Id. ¶ 29.) Island Air further alleges that Merlot "engaged in these trade practices knowing them to be deceptive and continues to engage in deceptive practices in denying a refund to" Island Air. (Id. ¶ 30.)

Both Merlot and Island Air make much of the interactivity of Merlot's website. Island Air argues, among other things, that prospective customers can fill out a form to "learn more about merlot's products and services," "Chat with us," "Schedule a demonstration," see "Product Videos," or request a "Brochure and Product Overview."[4] (Mem. in Opp'n at 14.) Conversely, Merlot argues that its website is akin to a "passive website" that "does little more than make information available to those who are interested in it[.]" (Mot. at 11 (quoting Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1123 (W.D. Pa. 1997)).)

However, the Court finds that the interactivity of Merlot's website

---

[4] Although not argued directly in its memorandum in opposition, Island Air appears to take the position that Merlot's status-update posts on its facebook page showing Merlot representatives attending a conference in Hawaii, with accompanying text such as "We are currently attending the [North American Crew Utilization] Fall Conference in Hawaii. We'd love the opportunity to share how merlot.aero products can work for you. Come and have a chat and marvel at our gorgeous shirts[,]" evidence purposeful direction. (Mem. in Opp'n at 3-4.) Given the broad, general nature of these online postings, Court cannot say that the social media posts are aimed at either Island Air or the forum in general such that they would constitute "purposeful direction."

does little to aid it in its determination. As an initial matter, the Court agrees with Merlot that there is no indication that its website alone was purposefully directed at Island Air or Hawaii, but, rather, that its website lacks that "'something more' to indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state." See Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 418 (9th Cir. 1997). However, the basis for Count II appears to be not only internet advertising, but alleged statements and representations made by Merlot to Island Air during the course of the negotiation of the Supply Agreement, as well as during the installation and testing of the merlot.aero system at Island Air. (See Compl. ¶¶ 28-30.) Thus, taking these allegations as true, the Court finds that Merlot did commit intentional acts when it made representations to Island Air during the course of contract negotiations, execution, and delivery.

### ii. Expressly Aimed at Hawaii

Second, the Court considers whether Merlot's intentional acts were expressly aimed at the forum state. Merlot allegedly made the misrepresentations and false statements to Island Air to induce it to purchase the merlot.aero system for use exclusively in Hawaii. As such, the Court finds that Merlot's intentional actions were expressly aimed at Hawaii.

### iii.    Causing Harm Suffered in Hawaii

Third, Island Air must show that Merlot's actions caused harm, "the brunt of which is suffered—and which the defendant knows is likely to be suffered—in the forum state." Panavision Int'l, L.P., 141 F.3d at 1321 (quoting Core-Vent Corp., 11 F.3d at 1486)).  As the Court noted in its discussion of Count I, Merlot knew that any injury arising from its breach of the Supply Agreement would manifest in Hawaii.  Similarly, Merlot must have known that any injury suffered by Island Air as a result of alleged misrepresentations either before or after execution of the Supply Agreement would be felt by Island Air in Hawaii, given that Island Air intended to use the merlot.aero system exclusively in Hawaii. Accordingly, the Court finds that Merlot purposefully directed its activities at Island Air in Hawaii.

### b.    Arising Out of Forum-Related Activities

As discussed above with relation to Count I, all of Merlot's actions— including alleged misrepresentations—concerned Island Air's use of the merlot.aero system within Hawaii.  As such, the Court finds that Count II arose out of Merlot's forum-related activities.

### c.    Reasonableness

Finally, the Court undergoes the same seven-part balancing test to

determine whether it is reasonable to exercise specific jurisdiction over Merlot as to Count II.  Again, for the reasons explained above, the Court concludes that Merlot has failed to show that specific jurisdiction is unreasonable.

Accordingly, the Court declines to dismiss the present case for lack of personal jurisdiction.  The Court holds that, although it lacks general jurisdiction, it has specific jurisdiction over both Counts I and II, given that (1) Merlot purposefully availed itself to this forum, (2) the alleged injury was caused by Merlot's forum-related activities, and (3) it is not unreasonable to exercise specific jurisdiction over Merlot.

II.    FORUM NON CONVENIENS

In the alternative, Merlot argues that the Court should dismiss this case for forum non conveniens.  Island Air does not contest Merlot's argument that, if the Court finds transfer is appropriate, it must dismiss the case, since it cannot transfer this case to a New Zealand court.  (See Mot. at 17-18.)  As such, the Court examines whether dismissal is appropriate under the doctrine of forum non conveniens.

The Ninth Circuit has stated that "[a] district court has discretion to decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties."  Lueck v. Sundstrand Corp., 236 F.3d 1137,

1142 (9th Cir. 2001) (citing <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 504 (1947),

<u>superseded by statute on other grounds as stated in</u> <u>Gazis v. John S. Latsis (USA),</u>

<u>Inc.</u>, 729 F. Supp. 979, 987 (S.D.N.Y. 1990)).  The Court must answer the

following two questions: "(1) whether an adequate alternative forum exists, and (2)

whether the balance of private and public interest factors favors dismissal." <u>Id.</u>

(citations omitted).  The defendant bears the burden of satisfying both prongs of

the test.  <u>Cheng v. Boeing Co.</u>, 708 F.2d 1406, 1411 (9th Cir. 1983).  "In carrying

this burden, [the movant] must provide sufficient information to enable the district

court to balance the parties' interests."  <u>Contact Lumber Co. v. P.T. Morges</u>

<u>Shipping Co. Ltd.</u>, 918 F.2d 1446, 1449 (1990).  Additionally, the Ninth Circuit

has held that, "while a U.S. citizen has no absolute right to sue in a U.S. court,

great deference is due plaintiffs because a showing of convenience by a party who

has sued in his home forum will usually outweigh the inconvenience the defendant

may have shown." <u>Id.</u> at 1449 (citing <u>Gates Learjet Corp. v. Jensen</u>, 743 F.2d

1325, 1335 (9th Cir. 1984), <u>cert. denied</u>, 471 U.S. 1066, (1985)).

    A.    <u>Adequate Alternative Forum</u>

       First, the Court considers whether another adequate forum is available

to Island Air.  An "alternative forum" exists "when the defendant is amenable to

service of process in the foreign forum." <u>Lueck</u>, 236 F.3d at 1143 (citations

omitted).  In its Motion, Merlot states that "[t]his threshold showing is easily met, as Island Air voluntarily subjected itself in the Contract to the jurisdiction of New Zealand Courts."  (Mot. at 19.)  However, the correct analysis is whether the *defendant in the present case*, i.e., *Merlot,* has agreed to subject itself to service of process in New Zealand, not *Island Air*.  See Lueck, 236 F.3d at 1143; Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n.22 (1981).  Because, presumably, Merlot agrees to service of process in New Zealand as evidenced by the filing of its own lawsuit against Island Air in New Zealand, the Court finds that there is an alternative forum for this dispute.

As to the adequacy of the forum, a forum will be "deemed adequate unless it offers no practical remedy for the plaintiff's complained of wrong." Lueck, 236 F.3d at 1144.  The Ninth Circuit has stated that "it is only in 'rare circumstances . . . where the remedy provided by the alternative forum . . . is so clearly inadequate or unsatisfactory, that it is no remedy at all,' that this requirement is not met."  Id. at 1143 (quoting Lockman Found. v. Evangelical Alliance Mission, 930 F.2d 764, 768 (9th Cir. 1991)).

In the present case, Merlot argues that New Zealand is an adequate forum, as Island Air has recourse under New Zealand law for both the alleged breach of contract (Count I) and the "misleading and deceptive conduct" (Count

32

II).  (Mot. at 20.)  Although Merlot concedes that New Zealand and Hawaii law differ, it argues that Island Air has adequate remedies in New Zealand and attaches copies of the relevant New Zealand laws.  (Id. at 20, Exhs. D-E.)  In response, Island Air merely argues that "it will be deprived of a jury if forced to litigate in New Zealand."  (Mem. in Opp'n at 18.)  Merlot offers no reason why the lack of the right to a jury trial will result in an inadequate remedy.

Accordingly, the Court finds that New Zealand is also an adequate forum.  As demonstrated by Merlot, Island Air can pursue the causes of action underlying both Counts I and II in a New Zealand court and seek relief similar to that requested here.  See Piper Aircraft Co., 454 U.S. at 247 (even if substantive law in foreign forum is less favorable to the plaintiff, the change in law alone cannot overcome dismissal for forum non conveniens).  Moreover, Island Air has failed to articulate why the absence of a jury trial, in and of itself, renders the foreign forum inadequate.  As such, New Zealand is both an alternative and adequate forum.

B.    Balance of Private and Public Interests

Next, the Court looks to balance private and public interests in determining whether to dismiss the case.  "Ordinarily, a plaintiff's choice of forum will not be disturbed unless the 'private interest' and the 'public interest' factors

33

strongly favor trial in a foreign country." Lueck, 236 F.3d at 1145 (citing Gulf Oil Corp., 330 U.S. at 509). The Ninth Circuit has stated that, "[w]hen a domestic plaintiff initiates litigation in its home forum, it is presumptively convenient." Carijano v. Occidental Petroleum Corp., 643 F.3d 1216, 1227 (9th Cir. 2011) (citing Piper Aircraft Co., 454 U.S. at 255-56). "[I]f the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." Lockman Found., 930 F.2d at 767.

1.     Private Interests

When weighing the private interests involved, the Court considers the following factors: (1) the residence of the parties and witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive. See Lueck, 236 F.3d at 1145. "The district court should look to any or all of the above factors which are relevant to the case before it, giving appropriate weight to each. It should consider them together in arriving at a balanced conclusion." Id. at 1145-46 (citing Gulf Oil Corp., 330 U.S. at 508; Contact Lumber Co., 918 F.2d at 1449).

However, the Ninth Circuit has stated that "a court's focus should not

rest on the number of witnesses or quantity of evidence in each locale. Rather, a court should evaluate 'the materiality and importance of the anticipated [evidence and] witnesses' testimony and then determine[ ] their accessibility and convenience to the forum.'" Id. at 1146 (quoting Gates Learjet Corp., 743 F.2d at 1335-36).

As an initial matter, the Court acknowledges that, whatever its ruling, one of the parties will be inconvenienced. However, it is difficult to balance the public and private interest, because the parties have provided little more than general statements about the quantity or importance of their respective witnesses and evidence. Nevertheless, based on the information before it, the Court balances the various factors, mindful that Merlot has the burden of proving that New Zealand is a more convenient forum than Hawaii. See Cheng, 708 F.2d at 1411 (burden is on the movant); Contact Lumber Co., 918 F.2d at 1449 (burden rests with the movant in providing the court with sufficient information).

a.    The Residence of the Parties and Witnesses

Island Air is a Hawaii-based company and claims that all of its witnesses who are employees or former employees are located in Hawaii. (Mem. in Opp'n, Davidson Decl. ¶ 12.) Island Air further expects to call as witnesses four Merlot employees located in Washington State and one Merlot employee in New

Zealand.  (Id.)  Conversely, Merlot is a New Zealand-based company, with offices and employees located worldwide, including the continental United States.  Merlot states that none of its witnesses reside in Hawaii, but, of its nine "fact witnesses," "two (2) are located in New Zealand; two (2) are located in Australia; two (2) are located in Seattle, Washington; one (1) is located in Canada; one (1) is located in the United Kingdom, and one (1) is located in Manila, Philippines."  (Mot., Decl. of Mark McCaughan ¶ 23.)  Merlot does not state where its single expert witness is located.  (Id.)

Given the stated locations of the various witnesses, the Court finds that Hawaii is the more convenient forum.  The Court is unable to weigh the relative importance of the various witnesses, but, if this case proceeds within this forum, all of the Island Air employees are already located in Hawaii, and ten Merlot witness would have to journey to Hawaii.[5]  However, if this case is transferred to New Zealand, only two of Merlot's witnesses are located in New Zealand, and at least 17 other witnesses from both sides would have to travel internationally to New Zealand.  Thus, based on the convenience of the parties and witnesses, this factor favors Island Air.

---

[5] It is unclear to what extent, if any, the five witnesses referenced by Mr. Davidson overlap with the ten Merlot witnesses identified by Mr. McCaughan.

b.    The Forum's Convenience to the Litigants

Second, the Court examines the convenience of this forum to each of the litigants.  This forum is extremely convenient for Island Air, which is located in Hawaii and claims to have all of its witnesses in Hawaii.  On the other hand, it is extremely inconvenient to Merlot, which does not have any physical presence in Hawaii.  However, Merlot does have locations within the United States, and Island Air was in contact with representatives in its Washington location.  As such, the Court finds that this factor slightly favors Island Air.

c.    Access to Physical Evidence and Other Proof

Both Merlot and Island Air claim that the relevant evidence is located in their respective domicile.  Merlot argues that the vast majority of evidence will be witness testimony, none of its witnesses are located in Hawaii, and the relevant documents are electronically-stored correspondence.  (Mot. at 22; Reply at 6-7.[6]) Conversely, Island Air states, without any support, that "most of the sources of proof such as witnesses and documents involved in this suit are in Hawai'i." (Mem. in Opp'n at 21.)  Because both sides have failed to provide the Court with

---

[6]  Merlot's Reply, filed on January 2, 2015, is 14-pages long and appears to utilize 12-point Times New Roman font.  Merlot is cautioned to adhere to Local Rule 10.2, which mandates specific font and size requirements.

any reasonable basis with which to evaluate this factor, the Court determines that this factor is neutral.

> d.    Compelling Unwilling Witnesses

Neither party has identified any anticipated problem regarding the Court's ability to compel witnesses in either forum.[7]  Thus, this factor is neutral.

> e.    The Cost of Bringing Witnesses to Trial

Aside from identifying the locations of the various witnesses, neither party has offered any compelling evidence regarding their respective costs of transporting witnesses to trial.[8]  As such, this factor is also neutral.

> f.    The Enforceability of the Judgment

Merlot argues that it will be easier for Island Air to pursue a judgment against Merlot if the case were held in New Zealand, as Merlot has no bank

---

[7] Merlot claims that, although a New Zealand court will not need to compel the attendance of any unwilling witness in this case, it can issue a subpoena, if necessary.  (Mot. at 22.)  However, it does not argue that this Court will have difficulties compelling unwilling witnesses.  Island Air does not appear to address this factor.

[8] Although Merlot states generally that "[i]t would be much less expensive for Merlot to have its witnesses testify in New Zealand than in Hawai'i," it offers no analysis as to Island Air's respective cost if trial were held in New Zealand, other than to acknowledge that "all of [Island Air's] witnesses appear to be employed by Island Air or are subject to its control."  (Mot. at 23.)  Island Air does not appear to directly address this factor.

accounts or real or personal property in Hawaii.  (Mot. at 23.)  Merlot also argues

that Island Air cannot enforce an injunction against Merlot in New Zealand.  (Id. at

28.)  Island Air does not address this issue.  Thus, this factor slightly favors Merlot.

g.    All Other Practical Problems Making
       Trial Easy, Expeditious and Inexpensive

Finally, the Court considers any other private factor that would

influence the ease, expediency, and expense of trial.  In the present case, Merlot

filed suit against Island Air in the High Court of New Zealand (Auckland Registry)

on November 6, 2014, similarly alleging breach of the Supply Agreement.[9]  (Mot.,

Exh. B.)  That case appears to involve the same parties and factual background as

are involved in this case.

As Merlot notes, whether or not the Court dismisses the current

action, the New Zealand case will proceed.[10]  (Mot. at 24.)  Merlot argues that "it

would be more expeditious and costs effective to dismiss the Complaint herein so

_____

[9] The Court gives little, if any, weight to Island Air's argument that,
subsequent to the filing of the Complaint in the present case, Merlot unfairly
rushed to file a similar complaint with the High Court of New Zealand (Auckland
Registry) in "retaliation."  (See Mem. in Opp'n at 18.)  Both parties admit that
Merlot had threatened litigation against Island Air six days before Island Air filed
the instant lawsuit.  (Reply at 7; Mem. in Opp'n at 7.)

[10] It is unclear as to how the New Zealand case will develop, as Island Air
has not yet filed its answer to the complaint.  (Mem. in Opp'n at 22.)

that Island Air must pursue its claims against Merlot in New Zealand by way of counterclaim in the existing New Zealand Lawsuit.  This would also eliminate the possibility of disparate and inconsistent outcomes and inconsistent rulings . . . ."  (Id.)  In response, Island Air merely argues that Hawaii is a more expeditious forum, since it will be months before any progress is made in the New Zealand case.  (Mem. in Opp'n at 22.)

The Court agrees with Merlot.  Given that a parallel proceeding— concerning the same agreement, parties, facts, and witnesses—is already proceeding elsewhere, it would likely be more expeditious if the two cases were combined into a single action.  Not only would a single action eliminate the risk of multiple, conflicting judgments, but the cost to the parties would be significantly lower, as they would not have to try the case in two separate forums, which might involve transporting attorneys, parties, and witnesses internationally.  It makes little sense for the same case to be tried in separate forums, when, as the Court has already determined, New Zealand offers an adequate, alternative forum.  While the Court could certainly try the cases if they were consolidated here, the Court has no influence on the direction of the New Zealand case.  Accordingly, because it is more expeditious and cost-effective to litigate the cases together, this factor favors Merlot.

## 2.   Public Interests

Next, the Court considers public interest factors, which are (1) local interest of the lawsuit; (2) the court's familiarity with governing law; (3) the burden on local courts and juries; (4) congestion in the court; (5) the costs of resolving a dispute unrelated to this forum.  See Lueck, 236 F.3d at 1147 (citing Piper Aircraft, 454 U.S. at 259-61; Gulf Oil Corp., 330 U.S. at 508-09).

### a.   Local Interest of Lawsuit

Hawaii courts may have an interest in this lawsuit, insofar as it involves a Hawaii company that is one of only a few interisland carriers.  See Gulf Oil Corp., 330 U.S. at 509 ("There is a local interest in having localized controversies decided at home.").  Moreover, the merlot.aero system was intended to be used exclusively in Hawaii, and any injury sustained by Island Air was felt most acutely in Hawaii.

The Court acknowledges, however, that New Zealand may also have an interest in this lawsuit, inasmuch as Merlot is a New Zealand company.  However, while both venues may have some interest, neither party has provided sufficient information for this Court to determine which venue has a greater interest.  Additionally, this is a private, contract dispute between two parties, and neither Merlot nor Island Air has articulated any overarching public policy

consideration in its favor.  Thus, this factor is neutral.

b.  <u>Familiarity with Governing Law</u>

Pursuant to the Supply Agreement, New Zealand law governs the

breach of contract dispute.  Although the Court admits that it is not familiar with

New Zealand law, it is certainly able to apply New Zealand law to Island Air's

breach-of-contract claim, which is based on common law principles.  However,

because the Court presumes that New Zealand courts are in the best position to

interpret their own laws, this factor weighs in favor of dismissal.  <u>See</u> <u>In re</u>

<u>Herbert</u>, Civ. Nos. 13-00452 DKW-BMK, 13-00705 DKW-BMK, 2014 WL

1464837, at *9 (D. Haw. April 14, 2014) (the mere possibility that foreign law

would apply weighs in favor of dismissal (citation omitted)).

c.  <u>Burden on Local Courts and Juries</u>

As discussed above, Hawaii courts may have an interest in resolving

this dispute.  Although Merlot points out that New Zealand does not have a jury

system—and thus a New Zealand jury would not be inconvenienced—Merlot has

not identified any specific burden on local jurors or the Court.  Thus, this factor

weighs slightly in favor of Island Air.

d.  <u>Court Congestion</u>

This Court's docket is not congested, and neither party has provided

any information on the actual congestion of the New Zealand courts, other than

Merlot's citation to a general court rule acknowledging that New Zealand courts

strive to provide a "just, speedy, and inexpensive determination" of a case. (Mot.

at 26.)  As such, because the Court has the capacity to oversee this lawsuit, this

factor favors Island Air.

e.    Costs of Resolving a Dispute Unrelated to the Forum

Although the cost of resolving the present dispute in Hawaii is not

insignificant, it is not so prohibitively expensive so as to warrant dismissal.

Neither side has provided any information on the relative costs to each forum, and,

as discussed above, the present dispute is not unrelated to Hawaii. Thus, this factor

favors Island Air.

Based on the above consideration of private and public factors, while

the balancing of the various factors is close, the Court's analysis favors Island Air

and the retention of the present case in this forum.  As discussed, the Court finds

that (1) the parallel proceeding in New Zealand and (2) the application of New

Zealand law weigh in Merlot's favor.  The Court is certainly mindful of the

possibility of multiple, conflicting judgments, as well as the duplicative efforts in

two separate forums that concern the exact same parties, agreement, witnesses, and

evidence.  Moreover, given that the Supply Agreement is governed by New

Zealand law, New Zealand courts are presumably in a better position to interpret and apply their own laws.

Nevertheless, the Court holds that, upon due consideration of all relevant private and public factors, Merlot has failed to meet its burden of showing that New Zealand is a more convenient forum such that the Court should dismiss the present case.  See Gates Learjet Corp., 743 F.2d at 1334-35 ("'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed'" (citations omitted)).  As noted above, "great deference" is afforded Island Air's choice of forum, and Merlot bears the burden of providing the Court with sufficient information to balance the parties' interests.  See Contact Lumber Co., 918 F.2d at 1449.  In the present case, although New Zealand is an alternative and adequate forum, the Court cannot say that it is a better or more convenient forum than Hawaii.  While it appears that it is equally easy to access electronic evidence in either forum, it is, on the whole, easier to transport the parties and witnesses to Hawaii, given that all of the operative facts and injury occurred in Hawaii.  Moreover, the burden on the Court and local jurors is low.

Furthermore, the Court is aware that it will have to interpret the Supply Agreement under New Zealand law.  The Court also recognizes that Merlot has filed its own lawsuit against Island Air in New Zealand, and, presumably, it

would be easier for the parties to only litigate this matter once. However, the application of New Zealand law to Count I is not so prohibitively burdensome or daunting that the Court should dismiss this case. New Zealand law, like American law, is derived from the common law, and the Court anticipates that the laws underlying a breach-of-contract claim do not differ drastically. Additionally, the mere existence of a fledgling lawsuit in another country is not enough to deprive a United States citizen of its right to a trial in its domestic forum.[11] Island Air filed its lawsuit first in Hawaii and is presumptively entitled to its choice of forum. The balancing of the various public and private interest factors does not warrant nullifying this presumption. The Court cannot say, based on the record before it, that Island Air should be stripped of this right.

This case is similar to another case in this district recently decided by Senior Judge Alan C. Kay. In considering the defendant's motion to dismiss for forum non conveniens, where the defendant corporation was domiciled in Hong Kong, the court weighed the various public and private interest factors, including the fact that it would have to apply Hong Kong law to the breach of contract

---

[11] Although Merlot's local counsel states, "I understand, based on information and belief, that New Zealand law allows a party sued there to assert a Counterclaim," (Mot., Decl. of Edmund Saffery ¶ 5) it is unclear whether Island Air will be able to file a counterclaim in that case or otherwise assert its own claims against Merlot.

action.  After assessing each factor, the court held that the defendant had "not met

its heavy burden of demonstrating that the substantial deference accorded to

Plaintiffs' choice of forum should be disturbed."  <u>Willcox v. Lloyds TSB Bank,</u>

<u>PLC</u>, Civ. No. 13-508 ACK-RLP, 2014 WL 7339181, at *8 (D. Haw. Dec. 23,

2014) (citations omitted).  It additionally was not deterred by the prospect of

having to interpret Hong Kong law and held that, "while Plaintiffs' claims are

governed by Hong Kong law, the parties can supply the relevant Hong Kong

authorities as they have done in a prior motion and in the instant motion."  <u>Id.</u>  The

court also discounted the defendant's conclusory argument that "court in Hong

Kong are adequately equipped to handle the contractual claims asserted by

Plaintiffs in an efficient and expeditious manner[,]" when the defendant did not

specify how the Hong Kong courts were so equipped.  <u>Id.</u> at *7.  Thus, as in the

present case, even the viability of an alternative forum and the possibility of

applying foreign law are insufficient to dismiss a case for forum non conveniens.

Based on the record before the Court, Merlot does not meet its heavy

burden of overcoming the presumption in favor of Island Air's choice of forum.

Merlot has the burden of providing the Court with sufficient evidence with which

to weigh the various factors, and the Court finds that Merlot's generalized

statements regarding, *inter alia*, the weight and sufficiency of evidence, the

importance of the various witnesses, the relative costs associated with litigation in each forum, and the relative congestion of the courts, do not provide it a sufficient basis on which to deny Island Air its presumptive right to trial in this forum. In other words, Merlot, as the movant, has failed to meet it burden of demonstrating that New Zealand is the more convenient forum.

Accordingly, the Court holds that, although New Zealand is an alternative and adequate forum, upon a consideration of all relevant private and public factors, Hawaii is a sufficiently convenient forum for the parties. As such, the Court denies Merlot's request to dismiss the case for forum non conveniens.

III.   FAILURE TO STATE A CLAIM

Finally, Merlot argues that, if the Court does not dismiss the claims against it for lack of personal jurisdiction or for forum non conveniens, then the Court should dismiss Count II, because it is based on Hawaii law, whereas the Supply Agreement is governed by New Zealand law. (Mot. at 27-28.)

This district has recognized that a choice-of-law provision governs the interpretation of a contract and rights arising therefrom, but not necessarily the related, non-contractual claims. See Prop. Rights Law Group, P.C. v. Lynch, Civ. No. 13-00273 SOM/RLP, 2014 WL 2452803, at *13 (D. Haw. May 30, 2014) ("While, under Hawaii's choice of law rules, Illinois law applies to PRLG's

contract claim, it does not follow that Illinois law necessarily governs this entire case.  The contract specifies only that Illinois law 'shall govern the validity of th[e] Agreement, the construction of its terms and the interpretation of the rights and duties of the parties hereto.' It does not state that Illinois law governs all claims brought by a party." (internal citation omitted)).  As stated by this district court:

> When the parties have not agreed to the application of a particular state's law, Hawaii's choice of law rules require a "flexible approach [that] places primary emphasis on deciding which state would have the strongest interest in seeing its laws applied to the particular case." <u>Del Monte Fresh Produce (Hawaii), Inc. v. Fireman's Fund Ins. Co.</u>, 117 Haw. 357, 364, 183 P.3d 734, 741 (2007) (internal quotation marks omitted). Courts must therefore weigh "the interests of the states and applicable public policy reasons [to] determine whether Hawaii law or another state's law should apply." <u>Id.</u> ***If all the conduct relevant to a noncontractual claim occurred in Hawaii, then it may be that it is Hawaii law that applies to that claim***, in which event a claim based on Illinois law would not be cognizable.

<u>Id.</u> (emphasis added).

The Court agrees with Island Air that, although Count I is governed by the Supply Agreement's choice-of-law provision, Count II is a non-contractual claim subject to Hawaii's laws.  As the Court discussed above, the Court has personal jurisdiction over this case, due in no small part to Merlot's purposeful availment of Hawaii's laws and its purposeful direction toward Island Air in the

forum.  As such, it is proper to apply Hawaii law to Count II, which is a non-

contractual claim and not subject to the choice-of-law provision.[12]

Moreover, Merlot argues that Island Air cannot enforce any injunction

against Merlot in New Zealand, thus rendering Count II moot.  (Mot. at 28.)

However, even assuming, *arguendo*, that injunctive relief cannot be enforced

against Merlot, Merlot may still be subject to attorneys' fees and costs.  See Haw.

Rev. Stat. § 481A-4 (1969).  Merlot does not argue that Count II is otherwise pled

---

[12] In its Reply, Merlot cites to an earlier ruling in the Willcox case for an instance in which Judge Kay found that a Hong Kong choice-of-law provision and permissive-forum-selection clause required dismissal of statutory claims based on Hawaii law, including HRS chapters 480 and 481A.  However, in that case, the choice-of-law provision read: "The transaction shall be governed by the laws of Hong Kong and the parties hereto agree to submit to the non-exclusive jurisdiction of the courts of Hong Kong."  Judge Kay acknowledged that, while the broad term "[t]he transaction" encompassed all related disputes, the Ninth Circuit has recognized that, when such a provision applies only to the "contract" or "agreements" themselves (as with the Supply Agreement), the foreign law "applie[s] only to the interpretation and enforcement of the contracts themselves, and [does] not encompass the plaintiffs' claims" arising under state statutory schemes.  2014 U.S. Dist. LEXIS 99186 at *36-37 (brackets added) (citing Narayan v. EGL, Inc., 616 F.3d 895, 898-99 (9th Cir. 2010)); see id. at *39 ("the choice of law provisions at issue in Smallwood and Narayan were narrow and applied only to the 'contracts' or agreements' themselves.  In this case, however, the Hong Kong choice of law provision in the facility agreement is broad and states that the entire 'transaction' is governed by, or controlled by, the laws of Hong Kong").  Moreover, while Judge Kay held that the statutory claims in that case "rose or fell" with the contract claims, in the present case, the chapter 481A claims here do not appear to be entirely dependent on the specific language of the Supply Agreement.  Cf. id. at *39, *41.

deficiently, and the Court therefore declines to dismiss Count II.

CONCLUSION

Accordingly, the Court holds that (1) it has personal jurisdiction over Merlot for each of the contract and tort claims; (2) Hawaii is a convenient forum for this litigation; and (3) Count II is properly pled as under Hawaii law. For the foregoing reasons, the Court DENIES the Motion.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 30, 2015.



 /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

Hawaii Island Air, Inc., DBA Island Air v. Merlot Aero Limited, DBA Merlot.Aero, CIV. NO. 14-00466 BMK, ORDER DENYING MERLOT AERO LIMITED d/b/a MERLOT.AERO'S MOTION TO DISMISS PLAINTIFF HAWAII ISLAND AIR, INC., DBA ISLAND AIR'S COMPLAINT, FILED OCTOBER 13, 2014 [DOC. NO. 1] FOR LACK OF PERSONAL JURISDICTION, IMPROPER VENUE, AND/OR FAILURE TO STATE A CLAIM